**SIGNED THIS: March 17, 2009**

                                                                    _____
                                                                         **MARY P. GORMAN**
                                                                    **UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re: ) | |
| ) | In Bankruptcy |
| PAMELA K. SALLADE BARDENSHTEIN, ) | |
| ) | Case No. 07-72594 |
| Debtor. ) | |

## O P I N I O N

This matter came before the Court for hearing on March 6, 2009, on the Debtor's Motion to Vacate Order Dismissing Case. For the reasons stated on the record at the hearing, and for the reasons set forth below, the Motion to Vacate must be denied.

Pamela K. Sallade Bardenshtein ("Debtor") filed her petition under Chapter 13 of the Bankruptcy Code on December 17, 2007. Debtor's Third Amended Chapter 13 Plan ("Plan") was confirmed on December 1, 2008. The Plan appears to be what is often referred to as a "save-the-home" plan.

-1-

On her schedules, the Debtor disclosed ownership of a residence located at 1 Stonehedges Court, Bloomington, Illinois valued at $625,000. The Debtor scheduled first and second mortgages on the residence with America's Servicing Company ("ASC") in the amounts of $505,000 and $120,000, respectively. Debtor's Plan proposed monthly payments to John H. Germeraad, Chapter 13 Trustee ("Trustee") of $1,925, from which the Trustee was directed to pay an arrearage on the first mortgage of $57,700, an arrearage on the second mortgage of $14,548, and past due real estate taxes to the McLean County Clerk in the amount of $12,623.51.[1] The Debtor proposed to make direct monthly payments to ASC of $4,861 on the first mortgage and $1,379 on the second mortgage.

At the time of filing, Debtor's total monthly household income, including income of her non-filing spouse, was $9,855.77. With $8,165 committed to the Plan payment and the two direct mortgage payments, the Debtor's household was left with only $1,690.77 for the payment of all other monthly expenses.

Not surprisingly, the Debtor was unable to maintain all of her promised payments and, on January 13, 2009, the Trustee filed a Motion to Dismiss the case based on the Debtor's default. The Trustee alleged in his Motion that the Debtor was $5,515 in arrears

---

[1] Debtor also proposed that the Plan payments be used to pay a priority claim to the Internal Revenue Service in the approximate amount of $8,800 and suggested that, after the payment of all other claims, a small dividend might be available for unsecured creditors.

on her monthly payments to him.  On January 21, 2009, ASC filed a Motion for Stay Relief, alleging that the Debtor had failed to pay the 2007 real estate taxes on the property which had become due after the case filing and, therefore, now owed $12,537 more to the McLean County Clerk than was proposed to be paid through the Plan. ASC also cited the Debtor's default in Plan payments to the Trustee as further grounds for finding that it was not adequately protected and should be allowed to proceed with foreclosure of its mortgages.

Debtor did not object to ASC's Motion, and an order granting stay relief was entered on February 6, 2009.  Debtor did object to the Trustee's Motion to Dismiss, and a telephonic hearing was set on the Motion to Dismiss for February 12, 2009, at 11:10 a.m.

This Court regularly conducts telephonic motion calls. Telephonic hearings are generally scheduled at five minute intervals, although multiple matters involving the same attorneys are often set at the same time.  Notices scheduling telephonic hearings indicate the expected participants by name and generally include the attorney of record for any party having an interest in the matter scheduled for hearing.  Chambers staff places the calls, and attorneys are called at the telephone number they have provided via the electronic case filing system utilized by this Court. Attorneys may, however, notify chambers before a telephonic motion call begins that they wish to be called at a different phone number, or that another attorney will be substituting and appearing on the call.

Debtor has been represented in this case by members of the Ostling & Associates law firm ("the Ostling firm"). She was initially represented by John L. Greenleaf, Jr. who left the firm in February 2008. At that time, Attorney Robert M. Ropp substituted as the Debtor's counsel. When Mr. Ropp left the firm in September 2008, Robert P. Follmer substituted as counsel for the Debtor. Mr. Follmer remains the Debtor's attorney of record and was identified as the expected participant on behalf of the Debtor on the notice of the February 12th telephonic hearing. Prior to the hearing, however, chambers staff was notified that Attorney Leann Niebuhr would be appearing for all of the Ostling firm's telephonic hearings set for February 12th. Her telephone contact number was provided. Attorney Niebuhr is not, to the best of the Court's knowledge, a member or employee of the Ostling firm but does frequently appear for the Ostling firm in matters before this Court.

On February 12th, the Ostling firm had several matters scheduled at 10:30 a.m. and, as expected, Attorney Niebuhr appeared telephonically on those matters. The Ostling firm had three more matters, including the Trustee's Motion to Dismiss in this case, scheduled for 11:10 a.m. Chambers staff was unable to reach Attorney Niebuhr at 11:10 a.m. as she did not answer at the provided phone number at which she had been reached earlier. The Court continued through the motion call handling other cases and chambers staff continued to try to reach Attorney Niebuhr.

At approximately 11:30 a.m. after efforts to reach Attorney Niebuhr were still unsuccessful, chambers staff placed a call to the Ostling firm to determine if another attorney would handle the matters. Chambers staff was told to keep trying Attorney Niebuhr. Shortly thereafter, a second call was placed to the Ostling firm advising that Attorney Niebuhr was still not answering her phone. Chambers staff was then advised to call another Ostling firm attorney at a cell phone number. Chambers staff did as instructed, but that attorney also did not answer her phone.

Finally, as the time for the noon recess approached and as the only calls remaining on the schedule were the three Ostling matters, a final call was placed to the Ostling firm requesting that an attorney from the firm be put on the line to handle the remaining matters. In response, the person at the Ostling firm who had answered the call simply hung up on chambers staff.

The three remaining matters were then heard without any appearances on behalf of the debtors involved. In this case, the Trustee reported the Debtor's default and noted the recent granting of relief from stay with respect to the Debtor's residence. The Trustee also noted that in response to the Motion to Dismiss, the Debtor through Attorney Follmer had represented that a Motion to Modify her Plan would be filed. As no such Motion to Modify had been filed, the Trustee suggested, and the Court agreed, that the Debtor, in promising to file a Motion to Modify, had made one more unfulfilled promise which indicated her inability to successfully

complete her Plan.  The Trustee's Motion to Dismiss was granted and the case was dismissed by an order entered that day.

On February 21, 2009, Debtor filed a Motion to Vacate Order Dismissing Case.  The Motion to Vacate made no mention of the failure of the Ostling firm to represent the Debtor at the February 12th hearing on the Trustee's Motion to Dismiss.  Likewise, the Motion to Vacate provided no explanation of why an Ostling firm employee hung up on chambers staff calling to alert the Ostling firm to the fact that the hearings on several motions were about to proceed in their absence.  The Motion to Vacate simply recited that the Debtor had a $5,000 cashier's check to tender to the Trustee to partially cure the arrearage and again promised that a Motion to Modify would be filed if the dismissal was vacated.  The Motion was signed by Attorney Follmer.  Attorney Niebuhr appeared for Attorney Follmer at the in-court hearing on the Motion to Vacate on March 6th. The Debtor did not appear.

Any post-judgment motion seeking relief from the judgment and filed within 10 days of the entry of the judgment should be considered a motion to alter or amend judgment brought pursuant to Federal Rule of Civil Procedure 59(e), as made applicable to this case by Federal Rule of Bankruptcy Procedure 9023.  *See* Charles v. Daley, 799 F.2d 343, 347 (7th Cir. 1986).  This is true regardless of how the motion is designated.  Id.  Thus, the Court will consider the Debtor's Motion to Vacate Order of Dismissal as being brought pursuant to Rule 59(e).

The purpose of Rule 59(e) motions is not to provide a litigant with "another bite at the apple" and, thus, an opportunity to present evidence that could have and should have been presented before the judgment was entered. *See* <u>In re BNT Terminals, Inc.</u>, 125 B.R. 963, 977 (Bankr. N.D. Ill. 1990). Rather, Rule 59(e) motions will only be successful when they establish that the judgment complained of was the result of a manifest error of law or that the judgment should be altered due to the discovery of new evidence. *See* <u>Moro v. Shell Oil Co.</u>, 91 F.3d 872, 876 (7th Cir. 1996). The granting or denial of a Rule 59(e) motion is within the discretion of the court. *See* <u>LB Credit Corp. v. Resolution Trust Corp.</u>, 49 F.3d 1263, 1267 (7th Cir. 1995).

Debtor's Motion to Vacate makes no allegations that the order dismissing the case was based on any error of law. Further, the Motion to Vacate does not suggest the existence of any newly discovered evidence. Rather, Debtor simply asserts that she will file a Motion to Modify but fails to provide any detail of what will be included in such Motion and does not provide any justification for her failure to file the Motion when previously promised. Debtor also says she has $5,000 to tender to the Trustee but provides no explanation of why her prospects for curing her default could not have been presented before the dismissal order was entered. Thus, the Motion to Vacate falls well short of containing sufficient allegations to be granted.

In considering the Motion to Vacate, it is important to

emphasize that this case was dismissed based on the Trustee's Motion and not as a sanction for the conduct of the Debtor's attorneys. It is also important to make clear, however, that the serious failings of the Debtor's attorneys may well have contributed to the dismissal of the case on February 12th.

There is no question but that the Debtor should have been represented at the February 12th telephonic hearing on the Trustee's Motion. Perhaps, if an attorney had appeared, details of the promised Motion to Modify could have been provided and, if the Debtor had the $5,000 that she now proposes to tender, the Trustee might well have been persuaded to seek continuance of his Motion.[2] But, the Debtor's attorney failed to appear and, unfortunately for the Debtor, she is bound by both the acts and the omissions of her attorneys.[3]  *See* <u>Doyle v. Shlensky</u>, 120 Ill.App.3d 807, 820, 458 N.E.2d 1120, 1131, 76 Ill.Dec. 466, 477 (1983); *see also* <u>In re Tax Shop, Inc.</u> 173 B.R. 605 (Bankr. E.D. Mich. 1994)(reinstatement of

---

[2] In fact, the Trustee took just such a position in another of the cases scheduled for February 12th when the Ostling firm failed to appear. In the matter of Lisa Collette Biggs, 05-77814, the Trustee reported that Ms. Biggs was in default but had only a small amount to pay in order to complete her Plan. Accordingly, the Trustee on his own motion requested that the matter be continued for further hearing at a later date.

[3] The United States District Court of the Central District of Illinois has adopted the Illinois Rules of Professional Conduct to govern the practice of law in all Central District courts. *See* CDIL-LR 83.6(D). Further, the Ostling firm's contractual relationships with its clients would be governed by Illinois law. Accordingly, citation to Illinois law is appropriate here.

dismissed Chapter 11 case denied where debtor's attorney failed to appear at hearing on dismissal).

Attorney Follmer and the Ostling firm are the attorneys of record for the Debtor. They were responsible for appearing and representing the Debtor at the February 12th hearing. Although they apparently retained a substitute attorney for the hearing, when that substitute failed to appear, they bear responsibility for the consequences to their client. Here, Attorney Follmer and the Ostling firm not only failed to appear but also failed to have even the most minimal of professional procedures in place to deal with the possibility that a substitute attorney would fail to appear. Clerical staff at the Ostling firm is apparently trained not to allow calls to be put through to attorneys in the office and further instructed that, if callers become too pesky by repeatedly calling, the remedy is to hang up the phone. This Court has heard numerous complaints over the years from clients of the Ostling firm and from creditor attorneys that calls placed to the Ostling firm are never put through to attorneys and are never returned.[4]  Such

---

[4] The third case set on February 12th where the Ostling firm failed to appear was in the matter of Thomas Beyer and Karen Beyer, 08-70382.  A Motion for Relief from Stay filed by Santander Consumer USA, Inc. ("Santander") with respect to a vehicle loan was scheduled to be heard.  The Beyers had filed a written response to the Motion for Relief from Stay indicating a desire to enter into a repayment agreement to cure their default.  Santander's attorney stated during the telephonic hearing that he had prepared just such an agreement and forwarded it to the Ostling firm but had been unable to get any response to his proposal and, therefore, wanted to prosecute his Motion.  In the absence of an appearance by the Ostling firm for the Beyers, Santander's Motion was granted.

a policy is unprofessional at best and, as was made painfully obvious here, extremely detrimental to the clients of the Ostling firm.

The failings of the Ostling firm do not, however, support vacating the order of dismissal in this case. Mistakes were made by Attorney Follmer and the Ostling firm in failing to appear and failing to have adequate procedures in place to deal with calls from the Court. Attorneys cannot conduct themselves as poorly as the Ostling firm did here and then expect the Court to fashion a remedy for them so that they can avoid exposure to their own clients. Attorney Follmer and the Ostling firm bear the responsibility for their failure to appear and the resulting dismissal and must answer to their own client. The Motion to Vacate Order Dismissing Case will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###